UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

TYREEK OGARRO,

                  Defendant.

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/13/2020
```

No. 18-cr-373-9 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

    Before the Court is a renewed request by Defendant Tyreek Ogarro for compassionate release under the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), in light of the COVID-19 pandemic. (Doc. No. 680.) Ogarro previously sought such relief in early April (Doc. No. 644), which the government opposed on both procedural and substantive grounds (Doc. No. 650). The Court denied Ogarro's request, finding that he had failed to exhaust his administrative remedies. (Doc. No. 666.) Since then, Ogarro has satisfied that procedural hurdle and the Court may now consider his motion on the merits. Although Ogarro has shown great progress during his incarceration, the reasons supporting his original sentence – imposed just three months ago – weigh strongly against a compassionate release at this time. Accordingly, Ogarro's motion is DENIED.

    From March 2018 until June 2018, Ogarro was a member of a drug trafficking organization known as the "Boss Crew," which operated in the Bedford-Stuyvesant neighborhood of Brooklyn, New York. (Presentence Investigation Report ¶ 11 ("PSR").) Over those three months, Ogarro distributed approximately 157 grams of cocaine base and approximately 20 grams of fentanyl. (*Id.* ¶ 28.) Ogarro's participation with the Boss Crew ended on June 6, 2018, when he was arrested along with several other members of the organization. (*Id.* ¶ 41.) Since then, Ogarro has been detained at the Metropolitan Detention Center (the "MDC") in Brooklyn.

On May 14, 2019, Ogarro pleaded guilty pursuant to a plea agreement with the government to one count of conspiring to distribute cocaine base in violation of 28 U.S.C. §§ 841(b)(1)(C) and 846. (Doc. No. 358.) According to the plea agreement, the parties stipulated to a Sentencing Guidelines range of 70 to 87 months' imprisonment. The PSR likewise concluded that the advisory Guidelines range was 70 to 87 months' imprisonment (PSR ¶ 104), and recommended that the Court impose a sentence of 60 months (*id.* at p. 25).

On February 4, 2020, the Court sentenced Ogarro below that range and below the PSR's recommendation to 50 months' imprisonment. In so doing, the Court acknowledged the seriousness of Ogarro's crime and several facts that exacerbated his culpability, in particular that Ogarro joined the conspiracy while still on probation from a 2017 conviction for criminal possession of a firearm (PSR ¶¶ 27, 60; Doc. No. 673 at 10 ("Sentencing Tr.")) and that he sought to obtain a firearm and ammunition in furtherance of the conspiracy (PSR ¶ 26; Doc. No. 604 at 5–7; Sentencing Tr. at 17–18, 27, 38). Nevertheless, in light of, among other things, Ogarro's role in the offense, his lack of youthful guidance, his remorse, and his pre-sentence rehabilitation, the Court concluded that a 50-month sentence was sufficient to satisfy the objectives of sentencing. (Doc. No. 609 at 2.) In particular, the Court noted that Ogarro had made significant strides during his incarceration, including obtaining his GED. (*E.g.*, Sentencing Tr. at 4, 16–17.) Ogarro has served approximately 23 months of his sentence thus far and is expected to be released on December 23, 2021. (Doc. No. 680 at 1.)

On April 3, 2020, Ogarro requested that the Court order his release under 18 U.S.C. § 3582(c)(1)(A) because of the current COVID-19 pandemic. (Doc. No. 644 at 1.) He clarified that although release under section 3582(c) is often permanent, he is amenable to a "temporar[y]" release "to continue to serve his sentence under strict home detention" until after the COVID-19

pandemic subsides.  (*Id.* at 5.)  Ogarro asserted that the MDC is ill-equipped to limit the spread of COVID-19 among inmates, which is particularly dangerous to him because he is asthmatic and therefore at acute risk for severe illness if infected.[1]  The government opposed Ogarro's request, arguing, among other things, that Ogarro has not demonstrated extraordinary and compelling reasons warranting relief under section 3582(c)(1)(A).  (Doc. No. 650 at 8–12.)

On April 14, 2020, the Court denied Ogarro's motion without prejudice, finding that Ogarro had failed to exhaust his administrative remedies.  (Doc. No. 666.)  A little over two weeks later, Ogarro renewed his request, stating that he has since remedied that procedural defect.  (Doc. No. 680.)

As the Court noted previously, it "may not modify a term of imprisonment once it has been imposed except pursuant to statute."  (Doc. No. 666 (quoting *United States v. Roberts*, No. 18-cr-528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020)).)  Section 3582(c)(1)(A) provides one such exception, often referred to as "compassionate release."  Through that provision, a court may reduce a defendant's sentence where "extraordinary and compelling reasons warrant such a reduction," and such relief would be consistent with both the objectives of sentencing set forth in 18 U.S.C. § 3553(a) and "applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

Here, Ogarro argues that the COVID-19 pandemic, coupled with his heightened risk from asthma, merits a compassionate release.  The Court disagrees.

For starters, it is dubious that by merely alleging that he "has asthma, . . . is in prison, and [that] there is a COVID-19 outbreak nationwide," Ogarro presents the type of "extraordinary and

---

[1] According to his PSR, Ogarro "was diagnosed with asthma as a child and still uses an inhaler when he exercises." (PSR ¶ 79.)  Ogarro has since informed the Court that his asthma has been classified as "Level II."  (Doc. No. 644 at 3.)

compelling reasons" that demand relief. *See United States v. Rodriguez*, No. 16-cr-167 (LAP), 2020 WL 1866040, at *4 (S.D.N.Y. Apr. 14, 2020) (rejecting a similar compassionate release motion). Indeed, the Court has only limited information about the severity of Ogarro's asthma and is also mindful that the MDC and other federal detention facilities are undertaking steps to minimize the danger COVID-19 poses to inmates (Doc. No. 650 at 10–11 (describing those efforts)). *See, e.g.*, *United States v. Lynch*, No. 20-cr-202 (LAP), 2020 WL 2145363, at *3 (S.D.N.Y. May 5, 2020) (denying bail where the defendant "proffer[ed] no medical complications that he ha[d] experienced . . . as a result of his asthma" and where "the [g]overnment . . . detailed the steps taken by the Bureau of Prisons in general and the MCC in particular to minimize the effect of COVID-19"); *United States v. Belle*, No. 18-cr-117 (VAB), 2020 WL 2129412, at *5 (D. Conn. May 5, 2020) (holding that the mere fact that a defendant has asthma is not enough to demonstrate that he is at severe risk from COVID-19 should he remain incarcerated).

But even if Ogarro has made this threshold showing, his motion would still fail. Despite the existence of "extraordinary and compelling reasons" calling for compassionate release, countervailing factors can still bar such relief. Specifically, before the Court may grant compassionate release, it must assess the section 3553(a) factors to determine "whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *United States v. Ebbers*, No. 02-cr-1144 (VEC), 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020); *see also United States v. Walter*, No. 18-cr-834, 2020 WL 1892063, at *2–3 (S.D.N.Y. Apr. 16, 2020) (denying compassionate release despite the presence of "extraordinary and compelling reasons" because, among other things, the section 3553(a) factors did not favor early release);

*United States v. Butler*, No. 19-cr-834 (PAE), 2020 WL 1689778, at *2–3 (S.D.N.Y. April 7, 2020) (same).

In this case, the section 3553(a) factors strongly disfavor compassionate release. In particular, (i) "the nature and circumstances of the offense," (ii) "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and (iii) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct," all outweigh the facts that might otherwise support Ogarro's release.[2] *See* 18 U.S.C. § 3553(a).

The Court's reasons for imposing a 50-month sentence on Ogarro are just as applicable today as they were three months ago. (Sentencing Tr. at 34–39.) Releasing Ogarro now, when he has served less than 50% of that sentence, would disserve those important interests. *See Walter*, 2020 WL 1892063, at *3; *Butler*, 2020 WL 1689778, at *3. Indeed, though Ogarro has shown encouraging signs of rehabilitation, he also committed the instant offense while on probation from a prior conviction involving a firearm. (Sentencing Tr. at 10.) Cutting his sentence in half would undermine its deterrent effect and would likely increase Ogarro's chance of recidivism. Moreover, as the Court explained during the original sentencing, the seriousness of Ogarro's crime – participating in a large-scale drug trafficking conspiracy – merits a harsher punishment than a two-year sentence.

At bottom, the Court is sympathetic to Ogarro's concerns for his health, but the remedy he seeks is simply too blunt an instrument for the task at hand. *See Ebbers*, 2020 WL 91399, at *7 (acknowledging that compassionate release should not "undermine the goals of the original

---

[2] Though certain of the other section 3553(a) factors are either neutral or slightly favor Ogarro's release – *e.g.*, "the need for the sentenced imposed . . . to provide [Ogarro] with needed . . . medical care," 18 U.S.C. § 3553(a)(2) – they are far outweighed by the considerations discussed herein.

sentence"). And though a case could be made for moving Ogarro to home confinement until the pandemic passes, that is not permitted by or consistent with the purposes of the compassionate release statute. *See Roberts*, 2020 WL 1700032, at *3 ("[T]he compassionate release statute does not allow the Court to grant [the defendant] . . . *temporary* release from custody.").

Of course, as the Court mentioned in its previous order, this does not mean that Ogarro is out of options. (Doc. No. 666 at 10.) Given Ogarro's admirable track record while incarcerated, he appears to be an excellent candidate for temporary release under 18 U.S.C. § 3622. The Court therefore recommends that the Bureau of Prisons consider granting Ogarro a furlough during the pendency of the ongoing COVID-19 pandemic. That decision, however, is exclusively reserved to the discretion of the Bureau of Prisons.

For the reasons set forth above, Ogarro's motion for compassionate release is DENIED. The Clerk of Court is respectfully directed to terminate the motion pending at document number 680, and the government is directed to serve a copy of this order on the warden of Ogarro's facility and to the Regional Counsel of the Bureau of Prisons.

SO ORDERED.

Dated: May 13, 2020
New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation