NA25ogaC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,              New York, N.Y.

            v.                         18 Cr. 373 (RJS)

TYREEK OGARRO,

            Defendant.

------------------------------x

                                       October 2, 2023
                                       10:15 a.m.

Before:

                HON. RICHARD J. SULLIVAN,

                                       Circuit Judge


                        APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  JEFFREY W. COYLE
     Assistant United States Attorney

CARDI & EDGAR, LLP
     Attorneys for Defendant
BY:  DAWN M. CARDI


ALSO PRESENT:  DWIGHT BROWN, USPO EDNY
               ALEXANDRIA HIRSCH, USPO SDNY
```

1               (Case called)
2               THE COURT:  Have a seat.  Thank you.  Let me take
3     appearances for the government.
4               MR. COYLE:  Good morning, your Honor.  Jeff Coyle for
5     the government, joined at counsel table here by Probation
6     Officers Dwight Brown and Alexandria Hirsch.
7               THE COURT:  Good morning to each of you.
8               And for the supervisee?
9               MS. CARDI:  Good morning, your Honor.  Dawn Cardi for
10    Tyreek Ogarro who is to my left.
11              THE COURT:  Ms. Cardi, good morning.
12              Mr. Ogarro, good morning to you.
13              THE DEFENDANT:  Good morning.
14              THE COURT:  So, Mr. Ogarro and I go back a ways, I
15    guess 2018.  Mr. Ogarro pleaded guilty to a narcotic offense,
16    was sentenced by me, he has now finished the term of
17    imprisonment, he has got three years of supervised release that
18    commenced in February of '22.  The term of supervised release
19    of course includes various conditions.  Among those conditions
20    are (A) that Mr. Ogarro be working.  Another is that he not be
21    using or possessing any kind of controlled substance and I was
22    disappointed to learn from probation that Mr. Ogarro has been
23    testing positive almost from the beginning, from February until
24    May he was testing positive pretty consistently.  He was going
25    to treatment but still using marijuana and testing positive for

1    marijuana, and then the treatment program ended in early June
2    and he was no longer tested and no longer getting treatment,
3    but he was recently tested again and on September 15 he tested
4    positive for marijuana again.
5            So it seems like Mr. Ogarro is persistently using a
6    substance that he is not allowed to be using while he is on
7    supervised release.  He is also not working.  It is not clear
8    to me what Mr. Ogarro is doing all day long but it doesn't seem
9    like he is complying with the terms of his supervised release.
10   So, I called this conference not because my goal is to throw
11   Mr. Ogarro back into prison but because I think Mr. Ogarro and
12   I need to have a better understanding as to what he is expected
13   to be doing and whether he is going to be able to meet those
14   expectations.
15           So, Mr. Ogarro, is anything I say a surprise to you at
16   this point?  No.  So let me hear from the probation officer.
17   Mr. Ogarro is being supervised in the Eastern District but he
18   is still under my supervision here in the Southern so.
19   Mr. Brown?
20           OFFICER BROWN:  So, so Mr. Ogarro has been supervised
21   in the Eastern District of New York since he commenced
22   supervision.  The probation department has been providing
23   resources to him with regards to employment.  As is mentioned
24   in the report we have referred to Com Alert, we have referred
25   him to the Hope Program, in hopes for him to start to secure

1   employment.  He has successfully completed OSHA training where
2   he has obtained his OSHA card and he is now looking for
3   employment as well.
4              THE COURT:  When did he get the OSHA card?
5              OFFICER BROWN:  I believe he got the OSHA card in May
6   of this year.
7              He was, as your Honor reflected on, he was in
8   treatment as the referral was in April 2022, however he was
9   discharged based on the maximum clinical benefit that the
10  provider had stated.
11             THE COURT:  I don't know what that means, the maximum
12  clinical benefit.  He was still using marijuana regularly and
13  testing consistently.
14             OFFICER BROWN: Yes.  That is correct, your Honor.
15             THE COURT:  They felt there was nothing more they
16  could do with him because he wasn't serious.
17             OFFICER BROWN:  That's correct, Your Honor.
18             THE COURT:  That sounds like he got kicked out.
19             OFFICER BROWN:  Yes, your Honor.
20             THE COURT:  So what are you proposing that we do at
21  this point then, Mr. Brown?
22             OFFICER BROWN:  Yes, your Honor.  So the probation
23  department would still like to continue to work with
24  Mr. Ogarro.  One of the things that we would like to do is
25  refer him back to treatment to another program.  We have

1  already reached out to several programs to essentially have him
2  admitted and started sessions.  The second thing is because the
3  employment has taken a while, he would like to modify his
4  conditions to include community service at 20 hours a week.  He
5  is currently going to a site right now and we just want to make
6  that consistent.
7       The last thing is that we want to have a 60-day
8  adjournment where the probation department will report to the
9  Court within 30 days, a written report of his progress, and if
10 there is any non-compliance we will ask the Court to schedule a
11 status conference.
12      THE COURT:  He will be tested then during that period?
13      OFFICER BROWN:  That is correct, your Honor.
14      THE COURT:  What frequency?
15      OFFICER BROWN:  We will test him today in the office
16 and have the treatment provider request two toxicologies
17 monthly.
18      THE COURT:  OK.  Thank you.
19      Ms. Cardi, I don't know if you have had an opportunity
20 to review the materials or to confer with your client about any
21 of this but do you have any thoughts as to how we ought to
22 proceed?
23      MS. CARDI:  Yes, your Honor.
24      I have talked to my client and reviewed the document
25 from probation.  I would call it more like he wasn't kicked

1  out, it was like that program just didn't work.  So I do think
2  there are many different ways to deal with substance abuse and
3  different programs have different protocols, so I'm cautiously
4  optimistic that given Mr. Ogarro's understanding of what he is
5  supposed to do, participation in the program, he tells me that
6  the antianxiety medication that was prescribed for him made him
7  really kind of loopy so instead, because it is really night
8  terrors that keep him up, he is using melatonin, which is fine,
9  and he has a goal of wanting to do home healthcare which I
10 think he would be terrific at, he is a very kind and caring
11 person.  So, I support and hope your Honor supports a 60-day
12 adjournment to see that he is progressing in the way he should
13 be.
14          THE COURT:  What steps is he taking to achieve this
15 goal of being a home healthcare attendant?
16          (Defendant and counsel conferring)
17          MS. CARDI:  Your Honor, he has already done the
18 paperwork.  He is waiting for his insurance to kick in, so to
19 speak.
20          THE COURT:  I don't understand.  His insurance to kick
21 in for what?
22          MS. CARDI:  I'm sorry.  The employer's insurance to
23 cover him, and then he will start getting assignments and
24 training.  So I believe by the time he is back here in 60 days
25 he will have been employed.

NA25ogaC

1     THE COURT:  Mr. Brown, do you know anything about this
2 home health care effort?
3     OFFICER BROWN:  Yes, your Honor.
4     So Mr. Ogarro did explain that he was applying for the
5 Freedom Care to take care of a family relative and that he
6 was -- I can verify that he did state that he was waiting for
7 the insurance, he did verify with the probation department.
8     THE COURT:  He is going to take care of a relative?
9     OFFICER BROWN:  Yes; it is a family friend that he
10 would be taking care of.
11     THE COURT:  This will be how many hours a week?
12     OFFICER BROWN:  That will be 25 to 30 hours a week.
13     THE COURT:  Because Mr. Ogarro has had no employment
14 at all since February of '22; right?
15     OFFICER BROWN:  So there has not been any employment.
16 He has been working up to this employment.
17     THE COURT:  What does that mean?  He has been working
18 up to this employment?
19     OFFICER BROWN:  He is going through the physical like
20 defense counsel stated.  He has been handling all of the
21 necessary requirements.
22     THE COURT:  What does that mean?  What is he doing all
23 day long?
24     OFFICER BROWN:  Currently he is unemployed.
25     THE COURT:  So what is he doing all day long that he

1    is getting ready for a job?  It seems to me that there is a lot
2    of jobs people can do in the interim, a lot of people get those
3    jobs.  It has been now 19 months since Mr. Ogarro has been out
4    and he hasn't had any.  So, it is a condition.  I'm not making
5    this up, right?  It is a condition of his supervision.
6            OFFICER BROWN:  Yes, your Honor.
7            THE COURT:  So that's surprising to me that we are
8    still at this point.  So, Ms. Cardi, you seem to think that he
9    is on the cusp of having a job as this home health care aide?
10           MS. CARDI:  Yes.
11           THE COURT:  What makes you optimistic?  I'm not sure I
12   follow.
13           MS. CARDI:  I'm optimistic because he says the
14   paperwork is in and they're waiting for the insurance coverage.
15   I know of the program where --
16           THE COURT:  When did the paperwork get done?
17           (Defendant and counsel conferring)
18           MS. CARDI:  Your Honor, he says he submitted the
19   paperwork about a month ago, he has had his physical which he
20   needed to have, and he is waiting for the insurance to cover
21   him -- the employer's insurance.
22           THE COURT:  In the interim we are just going to wait
23   around?
24           MS. CARDI:  I thought he was volunteering.  I thought
25   I heard probation say he is volunteering; is that correct?

|   |   |
|---|---|
| 1 | OFFICER BROWN: Yes, your Honor. So, currently, he is doing community service not on the frequency since it is not mandated, but he is going to community service outreach where they do have a soup kitchen. |
| 5 | THE COURT: He is doing that or planning to? |
| 6 | OFFICER BROWN: He is doing that. |
| 7 | THE COURT: When did he start? |
| 8 | OFFICER BROWN: He was referred in June to that program but I have spoken to pastor and the pastor stated he has been consistently going for at least two days. |
| 11 | THE COURT: How many a week? |
| 12 | OFFICER BROWN: Sometimes it is 10 hours, sometimes it is five. So, your Honor, if we can make it a modified condition to include that he does work 20 hours per week until that employment is obtained? |
| 16 | THE COURT: So, in other words, do community service in lieu of work. As long as he is not working he is going to do community service for at least 20 hours a week? |
| 19 | OFFICER BROWN: That is correct, your Honor. |
| 20 | THE COURT: Ms. Cardi? |
| 21 | MS. CARDI: Your Honor, that's what my client reports to me. |
| 23 | THE COURT: Are you OK with that condition? |
| 24 | MS. CARDI: Yes. |
| 25 | THE COURT: That if he is not working, then he will be |

NA25ogaC

1  expected to provide community service of 20 hours a week
2  minimum.
3        MS. CARDI:  Yes, we are.
4        THE COURT:  OK, Mr. Coyle, do you have any thoughts on
5  how we ought to proceed?
6        MR. COYLE:  Your Honor, we don't have anything to add.
7  Obviously the government is concerned with the defendant not
8  taking advantage of opportunities to seek employment but defer
9  for the time being for probation's plan here to get him back on
10 track.
11       THE COURT:  OK.  So, Mr. Ogarro, I think that's what
12 we are going do.  All right?  I'm going to schedule another day
13 to come back in for a status conference in about two months --
14 do we have the calendar?  That will be early December.  I guess
15 in the meantime probation is going to give me an update in
16 about 30 days.
17       OFFICER BROWN:  That is correct, your Honor.
18       THE COURT:  OK.  How about Monday, December 4, at
19 10:00 a.m.  Is that all right?
20       MS. CARDI:  Your Honor, I am on trial in the morning
21 but I can do the afternoon.
22       THE COURT:  Are you starting that day?
23       MS. CARDI:  It is a civil trial, yes.  I am doing it
24 from 10:00 to 12:30 out in Queens.
25       THE COURT:  So if we did it at 2:30 that would give

1    enough time to get here.

2              MS. CARDI:  Yes.

3              THE COURT:  So 2:30, Monday, December 4th.  Hopefully
4    then we will have some progress on the work front and on the
5    substance abuse front, and then we can continue with Mr. Ogarro
6    just remaining on supervision.  If things get worse or don't
7    get better then I guess I will have to decide whether I am
8    going to formally present him on the violation.  It sounds like
9    there is a new violation, right?  September 15th is when he
10   last tested positive so that would be an additional use of
11   drugs since the report was prepared.  So, in the meantime, I'm
12   going to keep that report and those violations in abeyance and
13   we will see where we are in 60 days.

14             so, Mr. Ogarro, you have to work, you have to stop
15   smoking marijuana.  I know the state has effectively legalized
16   it but it is still a controlled substance federally.  It is
17   also, frankly, not healthy and good for you.  I mean, there is
18   reports on this every day.  The Post had an article on this I
19   think over weekend.  So, I think it's not something that you
20   should be doing, you are not permitted to be doing in any way,
21   but it is not going to be good for your long term prospects as
22   somebody who wants to maintain a job, stable residence and
23   stable employment.  I don't think persistent marijuana use is
24   going to help.  So take this seriously, all right?

25             Anything else we should cover today.

1           MS. CARDI:  Your Honor I think you have to reappoint
2     me.
3           THE COURT:  Yes.  I will do that.  I have the form
4     that I will docket.
5           MS. CARDI:  Thank you.
6           THE COURT:  So, yes, I will do that.  You represented
7     Mr. Ogarro at sentencing I believe; right?
8           MS. CARDI:  Correct.
9           THE COURT:  In the plea and in the sentencing; right?
10          MS. CARDI:  Yes.
11          THE COURT:  So, yes.  OK.  So hopefully this won't be
12    a long term thing, we will get this back on track and say, OK,
13    there was this period of not great conduct but we got it back
14    on track and then Mr. Ogarro can say he is employed.  That's my
15    hope, Mr. Ogarro, but you have to do it.  All right?
16          THE DEFENDANT:  OK.
17          THE COURT:  All right.  Thanks very much.  Let me
18    thank the court reporter.  If anyone needs a copy of the
19    transcript, you can take it up with the court reporter either
20    now or later through the website.  And then we will see each
21    other on December 4, and then, Mr. Brown, if you can send me
22    something around November 4?
23          OFFICER BROWN:  Thank you.
24          THE COURT:  Let me see what day of the week that is.
25    That's a Saturday so November 3rd, say.

NA25ogaC

1          OFFICER BROWN:  Thank you, your Honor.

2          THE COURT:  Thanks very much.

3                              o0o