```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                              18 CR 373(RJS)

TYREEK OGARRO,

            Defendant.

------------------------------x
                                            New York, N.Y.
                                            December 4, 2023
                                            2:40 p.m.
Before:

                HON. RICHARD J. SULLIVAN,

                                            Circuit Judge
                                            Sitting By Designation

                         APPEARANCES


DAMIAN WILLIAMS,
     United States Attorney for the
     Southern District of New York
BY:  JUN XIANG
     Assistant United States Attorney

DAWN CARDI
     Attorney for Defendant

Also Present:
Dwight Brown, Probation (EDNY)
Alexandria Hirsch, Probation
```

1              (Case called)
2              THE COURT:  Let me take appearances for the
3     government.
4              MR. XIANG:  Good afternoon, your Honor.
5              Jun Xiang for the government; Officers Dwight Brown
6     and Alexanderia Hirsch with probation.
7              THE COURT:  Good afternoon, Mr. Xiang, Mr. Brown, and
8     Ms. Hirsch.
9              And for the supervisee.
10             MS. CARDI:  Good afternoon, your Honor.
11             Dawn Cardi, and Mr. Tyreek Ogarro is to my left.
12             THE COURT:  Ms. Cardi and Mr. Ogarro, good afternoon.
13             To recap where we are, we were last here in October.
14    At that point, Mr. Ogarro had tested positive for a number of;
15    times, and so we had sort of a plan in place to see if we could
16    maybe get ourselves back on track.  I then got a summary from
17    probation just a few days ago indicating that, to his credit,
18    Mr. Ogarro, seems to have sort of gotten back on track.  He's
19    been attending treatment sessions, he's not been testing
20    positive, he's been doing what's been asked of him, and that's
21    a good thing.
22             So let me just say, Mr. Brown, you have the most
23    contact with Mr. Ogarro at this point.
24             MR. BROWN:  Yes, your Honor.
25             THE COURT:  So what else can you tell me?

1          MR. BROWN:  Sure, your Honor.  As you know, the goal
2     of the probation department was to get Mr. Ogarro back on
3     track.  One of the key things we wanted to do was essentially
4     change his treatment schedule and program, which we have done.
5     I was in contact with his primary counselor throughout the
6     course of the month and the prior month.  They said that he is
7     motivated, that he has been attending all of his treatment
8     sessions, he's been testing, as your Honor stated, negative for
9     all illicit substances.  We also take testings when he reports
10    to the probation department, and he was also found to be
11    negative of all substances as well.
12         THE COURT:  And he's working?
13         MR. BROWN:  So he is continuing with the community
14    service in lieu of employment.  The thing that's holding him up
15    right now, he does have secured employment with Freedom Care;
16    however, because he doesn't have a state identification that
17    has been --
18         THE COURT:  We're still working on that?
19         MR. BROWN:  Correct.
20         THE COURT:  Are we close?
21         MR. BROWN:  So he did have an appointment with the
22    Civil Court Division to have a change in name.  We just
23    recently found out he was carrying his father's last name,
24    Walters, and he wants to change it to Ogarro.  So he does
25    have -- I just presented him some documentation to support this

1   name change.  He did ask for his disposition.  He does have his
2   own birth certificate, which he obtained.  So as soon as he
3   does submit all those documentations, he will get the
4   identifying and then move forward.
5            THE COURT:  Submit them to whom?
6            MR. BROWN:  To the Civil Court Division for the name
7   change.
8            THE COURT:  One of the things about the RISE Court, I
9   noticed, is they have basically a volunteer lawyer team from a
10  firm that is providing pro bono assistance to the members of
11  the RISE Court, which might be a dozen people or so.  But they
12  are great at this kind of stuff.  You need to get
13  documentation, you need to get a name change, you need to
14  square away, whether it's child support or a divorce, things
15  like that, they are really helpful on that.
16           So do we have the support we need to help Mr. Ogarro
17  get there relatively quickly?
18           MR. BROWN:  So I think we do, your Honor.  On my end,
19  I am working to try to see if I can expedite our resources in
20  the Eastern District.  He says that he is close of getting it
21  himself.  He's also been proactive in trying to push to get his
22  identification.  He was pushing to get his birth certificate.
23  We have been proactive in that step as well.  So we will
24  definitely notify your Honor as soon as that is handled and
25  taken care of.

1    THE COURT:  Okay.  Thank you, Mr. Brown.
2    Ms. Cardi, is there anything you want to add?
3    MS. CARDI:  No, your Honor.
4    THE COURT:  What's the proposal, then, going forward?
5  I guess that's to the probation or to the government.  What do
6  you recommend we do?
7    MR. BROWN:  Your Honor, I think we're on a good track
8  right now.  If your Honor does want us to have a follow-up,
9  another status report to just update you in regards to
10 employment and then another status conference, the probation
11 department is open to that, but we do defer to the Court.
12   THE COURT:  I think probably a status report is
13 enough.  I don't want to drag Mr. Ogarro down here if it is
14 just to share good news.  I think we can do that with a report.
15 Good news is good.  It's not a bad thing to look at Mr. Ogarro
16 and say, well done, you've turned it around.  Since October,
17 you've done what I asked you to do, so that's good.  But I
18 don't want to bring him down here unnecessarily.  I'm going to
19 assume things are going well.
20   Why don't you give me another status report in
21 60 days?
22   MR. BROWN:  That's perfect.
23   THE COURT:  If things go south, you'll let me know
24 sooner.
25   MR. BROWN:  Yes, your Honor.

1                THE COURT:  Does that work for the government?
2                MR. XIANG:  Yes, your Honor.
3                THE COURT:  Ms. Cardi, does that work for you?
4                MS. CARDI:  Yes, your Honor.
5                THE COURT:  Mr. Ogarro, is there anything else on your
6     mind?
7                THE DEFENDANT:  No.
8                THE COURT:  You're doing okay?
9                THE DEFENDANT:  Yes, yes.
10               THE COURT:  So you're working how many hours a week?
11    Are you doing the community service now?
12               THE DEFENDANT:  20.
13               THE COURT:  20.  Okay.  That's enough to keep you
14    busy?
15               THE DEFENDANT:  Yeah.
16               THE COURT:  What sorts of things are you doing?  A
17    little closer to the mic.  Thanks.
18               THE DEFENDANT:  I help the pastor, I help him with
19    his -- like, he have a lot of flyers for CASAC, that people
20    want to become, like, a part of, like, alcohol -- alcohol,
21    substance abuse -- like, people that want to become -- like, I
22    forget the -- like, caseworkers.  So I help him, like, get
23    those flyers out to people every week.  Every Sunday, we have
24    service.  I go to the service, he do the service.  Anything he
25    needs, whether it's computers, I help him with that just to

1   further the church.
2           THE COURT:  Okay.  Go ahead.
3           MR. BROWN:  I also have a progress report from his
4   community that just gives sort of what he's doing, what's
5   entailed, his sign-in sheet, if your Honor would like to see
6   it.
7           THE COURT:  I'll take a look, if you can just hand it
8   up.  Thanks.
9           Mr. Ogarro, are you getting paid for the work that you
10  do?
11          THE DEFENDANT:  No.
12          THE COURT:  Okay.  But this letter does indicate that
13  there's training available?
14          MR. BROWN:  Yes, your Honor.
15          THE COURT:  That would be paid for?
16          MR. BROWN:  Right.  So because we were in this
17  in-between where Mr. Ogarro was testing positive for marijuana,
18  the church does have -- through ACCES-VR and Workforce1, they
19  do have a program where he would be like a peer advocate for
20  substance abuse where he talks to kids at risk, kind of like
21  similar to what his situation was but on a state level, where
22  he'll be more of like a counselor to them.  But he has to
23  complete 350 hours of training.  He would have to do a number
24  of other things.  But we wanted to make sure that was squared
25  away with court first before enrolling him into a program and

1     seeing if he was serious about being more of a peer advocate.
2                THE COURT:  Okay.  That's something Mr. Ogarro wishes
3     to do?
4                MR. BROWN:  Yes.
5                THE COURT:  Or he's still thinking about it?
6                MR. BROWN:  So I think he wants to at least get
7     employment with the Freedom Care first, but this is an
8     opportunity if he's interested in, he can take.
9                THE COURT:  Okay.  Mr. Ogarro, is there anything you
10    wanted to say?
11               THE DEFENDANT:  Well, as for the CASAC, I definitely
12    do -- that's something I look forward to doing.
13               THE COURT:  Okay.  Let's then say 60 days from today,
14    I'll give you a date certain, Mr. Brown.  So what's today?
15    Today is December 4, February 4 is more or less 60 days.
16    That's a Sunday.  So February 5.  Is that okay?
17               MR. BROWN:  That's perfect, your Honor.
18               THE COURT:  Just a quick status update, like you sent
19    to me last time.
20               MR. BROWN:  Okay.
21               THE COURT:  Thank you.  And thank you, Ms. Hirsch.
22               So with that, anyone who needs a copy of the
23    transcript can request that either directly from the court
24    reporter today or later through the website.
25               Mr. Ogarro, keep up the good work.  Great.  Happy

1   holidays to you and your family.
2             THE DEFENDANT:  You too, sir.
3             (Adjourned)